The appealing party has shown good grounds to reconsider the evidence. Upon much detailed reconsideration of the evidence, the undersigned reaches different facts and conclusions than those reached by the Deputy Commissioner. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between the plaintiff and the defendant-employer.
3. The defendant is a duly self-insured and Key Risk Management Service, Inc., is the servicing agent.
4. Plaintiff's average weekly wage was $521.15, yielding a compensation rate of $347.45.
5. All Industrial Commission forms previously filed in this action are stipulated into evidence.
6. Plaintiff's medical records were stipulated into evidence as part of the Pre-Trial Agreement. These documents consist of 81 pages of medical documentation relating to the plaintiff's care.
7. The issues before the Commission are:
 (i) Whether plaintiff is entitled to continuing temporary total disability benefits after his benefits were terminated pursuant to a Form 24 procedure on March 4, 1996;
 (ii) Whether plaintiff's other medical problems are causally related to his compensable injury of September 26, 1995.
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of David H. Deaton, M.D., K. Stuart Lee, M.D., Greig V. McAvoy, M.D., Lee A. Whitehurst, M.D., and Tina Campbell, LPT are OVERRULED.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission rejects the findings of fact by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was sixty-two years old. He has a sixth grade education and is unable to read. Plaintiff was hired as a mechanic by defendant-employer in January 1995. Plaintiff's duties included servicing defendant-employer's trucks and vehicles.
2. On September 26, 1995, plaintiff was working on the front part of the engine of one of the company vehicles. Plaintiff had been bending over the engine for an extended period of time performing this work. When plaintiff stood up, he felt a sharp pain in his back with pain radiating down his left hip and leg.
3. The following day plaintiff reported to Carolina Urgent Care Center for treatment and was examined by Dr. Evelyn Levi. Plaintiff was diagnosed by Dr. Levi with lumbar strain with radiculopathy. Dr. Levi wrote plaintiff out of work at that time. Plaintiff was referred to Dr. Greg Nelson for further treatment.
4. On October 6, 1995, plaintiff was examined by Dr. Greg Nelson. Dr. Nelson initially diagnosed plaintiff with degenerative disc disease with L4 radiculopathy. Plaintiff was seen by Dr. Nelson for a follow-up visit on October 19, 1995 at which time Dr. Nelson diagnosed a herniated disc at L4-5 with left leg pain.
5. Dr. Nelson instructed plaintiff to remain out of work for two more weeks.
6. On November 2, 1995, Dr. Nelson informed plaintiff that he could return to light duty work on November 6, 1995 with restrictions of no prolonged sitting, standing, or walking; no climbing, bending, or stooping; and no lifting greater than 25 pounds.
7. Plaintiff did not return to work until November 20, 1995 due to illness unrelated to his work-related injuries of September 26, 1995.
8. Defendant admitted liability for plaintiff's injury by accident on an Industrial Commission Form 60 Admission of Employee's Right to Compensation dated November 1, 1995. Plaintiff was paid temporary total disability benefits by defendant from September 27, 1995 until November 27, 1995.
9. On December 13, 1995, Dr. Nelson referred plaintiff to Dr. Greig McAvoy, Dr. Nelson's partner, for possible surgery for plaintiff's back.
10. Plaintiff was seen by Dr. McAvoy on December 18, 1995. Dr. McAvoy diagnosed plaintiff with spinal stenosis at two levels of the lumbar spine, as well as an extruded left L4-5 disc herniation on the left side. Dr. McAvoy diagnosed plaintiff with disc bulging, or herniation, at L5-S1, but stated that this condition was attributable to degenerative disc disease. Dr. McAvoy also found that the lumbar spinal stenosis preexisted plaintiff's job injury.
11. Dr. McAvoy recommended an L4-5 discectomy on the left side with a decompression laminectomy to address the spinal stenosis. Dr. McAvoy also recommended that plaintiff should decrease and discontinue his smoking in order to improve his chances of successful surgery.
12. On January 10, 1996, Dr. McAvoy performed back surgery on plaintiff. Plaintiff was seen by Dr. McAvoy on a follow-up visit on January 18, 1996 at which time Dr. McAvoy found that plaintiff tolerated the procedure well, and that plaintiff's back was in good condition. Plaintiff continued to smoke despite Dr. McAvoy's encouragement to quit. Dr. McAvoy arranged for plaintiff to receive physical therapy and stated that plaintiff could return to work in approximately six weeks.
13. In February 1996 plaintiff alleges that he experienced sudden and low back, left leg and foot pain undergoing physical therapy exercises for his hamstrings. Plaintiff further alleges that the physical therapy exercises caused his left foot to become swollen, cold and purple. However, Tina Campbell, the physical therapist conducting plaintiff's exercises, did not have any recollection of any complaints from plaintiff during these exercises and her notes did not contain any mention by plaintiff of alleged pain during these exercises.
14. Plaintiff was released to return to light duty as of March 4, 1996, by Dr. McAvoy. Dr. McAvoy assigned restrictions of no climbing, bending, or stooping, and no lifting over 20 pounds.
15. Defendant-employer sent a certified letter to plaintiff offering him light duty work. According to the job description, this alternate duty work included the following duties: answering phones, picking up parts, delivering trucks to shipping and receiving, sweeping and washing cars, and general cleaning duties. According to John Bolden, defendant-employer's personnel manager, this job was the same position plaintiff normally worked in the garage, with accommodations made so that plaintiff would not exceed his work restrictions.
16. Dr. McAvoy approved this job as being within plaintiff's restrictions. Dr. McAvoy urged plaintiff to return to work in order to continue his rehabilitation and felt that returning to work would improve plaintiff's overall condition.
17. There is no evidence of record that the modified work offered to plaintiff was a job regularly available to other employees working for defendant-employer or that other employers would hire plaintiff to do a similar job at a comparable wage.
18. Plaintiff did not return to work in the modified position due to unrelated medical problems.
19. Defendant-employer filed a Form 24 application to terminate compensation benefits which was approved by the Industrial Commission on May 22, 1996, with an effective date of March 4, 1996.
20. While being treated by Dr. Nelson and Dr. McAvoy for his back and leg, plaintiff began experiencing vascular problems. On March 2, 1996, plaintiff reported to the emergency room at Pitt Memorial Hospital with severe pain and edema in his left foot. Plaintiff was examined by Dr. David Deaton, a vascular surgeon and professor at East Carolina School of Medicine, on March 7, 1996. Dr. Deaton noted that plaintiff had a long history of smoking and hypertension. Dr. Deaton diagnosed plaintiff with severe lower extremity occlusive disease with tissue loss that could be the result of atheroembolism.
21. Dr. Deaton performed surgery on plaintiff's groin area on March 12, 1996, and plaintiff was hospitalized until March 25, 1996. Dr. Deaton performed surgery on plaintiff's left foot on April 4, 1996, and eventually amputated two toes.
22. The vascular compromise in plaintiff's left foot was not causally related to plaintiff's injury by accident or the physical therapy.
23. On June 24, 1996, plaintiff returned to Dr. McAvoy with the same complaints of back and leg pain. Dr. McAvoy again encouraged plaintiff to return to work.
24. Dr. Deaton referred plaintiff to Dr. K. Stuart Lee, of Eastern Carolina Neurosurgical Associates, for another opinion concerning his back and leg problems. On June 26, 1996, Dr. Lee diagnosed plaintiff with left lumbar radiculopathy which had not improved since surgery. Dr. Lee agreed with Dr. Deaton that plaintiff's vascular difficulty could not be linked to plaintiff's back surgery.
25. On September 23, 1996, Dr. McAvoy noted that plaintiff had reached maximum medical improvement and assigned a ten percent permanent functional impairment of his back.
26. On November 13, 1996, plaintiff was examined by Dr. Lee Whitehurst. Dr. Whitehurst diagnosed plaintiff with arterial sclerosis consistent with a smoking history and spondylosis involving lumbar spine post disc surgery. Dr. Whitehurst opined that plaintiff's disc disruptions were consistent with the degeneration that occurs with aging and smoking. Dr. Whitehurst further stated that plaintiff should return to sedentary or light work initially to allow for a transition to regular work. He recommended a 50-pound lifting limit.
27. Plaintiff's presumption of disability continues as there is insufficient evidence in the record to prove by the greater weight that defendant offered plaintiff suitable employment or that plaintiff is capable of earning his pre-injury wages in the same or any other employment.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury to his back on September 26, 1995 and was paid compensation pursuant to a Form 60 from September 27, 1995 until March 4, 1996. Gen. Stat. §97-2(6) and § 97-29. By filing the Form 60 defendant admitted plaintiff's right to compensation for the injury by accident on September 26, 1995. The Form 60 and defendant's subsequent payment of workers' compensation benefits constitute an Award of the Commission with respect to compensability and liability for the injury by accident. Calhoun v. Wayne Dennis Heating AirCond., 129 N.C. App. 794, 501 S.E.2d 346 (1998). Therefore, plaintiff is entitled to a rebuttable presumption of continuing disability. Smith v. Sealed Air Corp.,127 N.C. App. 359, 489 S.E.2d 445 (1997); Kisiah v. W.R. KisiahPlumbing, 124 N.C. App. 72, 476 S.E.2d 434 (1996).
2. In this case, defendant has failed to rebut the presumption of plaintiff's continuing disability. A job which is specifically created for an injured worker and is not generally available to other individuals in a competitive job market is "make work" and is not evidence of plaintiff's wage-earning capacity nor does it qualify to rebut plaintiff's presumption of continuing disability. Peoples v. Cone Mills,316 N.C. 426, 342 S.E.2d 798 (1986). Likewise, a job which is so modified that it does not accurately reflect a plaintiff's ability to earn wages in the competitive job market does not rebut plaintiff's presumption of continuing disability. Therefore, plaintiff's refusal to return to the proffered job, which was "make work," was justified. N.C. Gen. Stat. § 97-18.1; § 97-32.
3. Plaintiff is entitled to have defendant resume payment of ongoing compensation for total disability at the rate of $347.45 per week as of March 4, 1996, and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of all past and future medical expenses incurred or to be incurred as the result of his compensable injury by accident. N.C. Gen. Stat. § 97-25.
5. Plaintiff has failed to prove by the greater weight of the evidence that his vascular problems were causally related to his compensable injury of September 26, 1995. N.C. Gen. Stat. §97-2.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay compensation to plaintiff at the rate of $347.45 per week beginning March 4, 1996 and continuing thereafter until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum without commutation.
2. A reasonable attorney's fee in the amount of twenty-five percent of the benefits awarded in Paragraph 1 is hereby awarded for plaintiff's counsel. This attorney's fee shall be deducted from the compensation benefits payable to plaintiff and paid directly to his attorney.
3. Defendant shall pay all medical expenses incurred, or to be incurred, by plaintiff as a result of his compensable injury by accident.
4. The Form 24 application to terminate compensation was improvidently approved by the Commission and is HEREBY VACATED.
Defendant shall pay the costs due this Commission.
This the ___ day of March 1999.
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
LKM/jth